UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | CASE NO. CV F 11-1564 LJO SAB |
| Plaintiff, | **SUMMARY JUDGMENT DECISION** (Doc. 27.) |
| vs. | |
| TAHIR JAMEEL BATH, et al., | |
| Defendants. | |
| _____/ | |

## <u>PRELIMINARY STATEMENT TO PARTIES AND COUNSEL</u>

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact United States Senators Dianne Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider, and if necessary, to reconsider consent to one of the Court's U.S. Magistrate Judges to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases. A Magistrate Judge consent form is available on this

Court's website.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. If a trial trails, it may proceed with little advance notice, and the parties and counsel may be expected to proceed to trial with less than 24 hours notice. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California. Case management difficulties, including trial setting and interruption, are avoided if the parties consent to conduct of further proceedings by a U.S. Magistrate Judge.

## INTRODUCTION

Pursuant to F.R.Civ.P. 56, plaintiff J & J Sports Productions, Inc. ("J & J") seeks to impose a monetary judgment against defendants Tahir Jameel Bath and Umaran Faisal Bath (collectively "defendants") for defendants' unlawful interception of a closed-circuit boxing program. Defendants respond that factual issues exist whether they intercepted the program bar summary judgment for J & J. This Court considered J & J's summary judgment motion on the record[1] and VACATES the November 13, 2013 hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DENIES J & J summary judgment.

## BACKGROUND

### Program Licensing And Alleged Interception

J & J is a closed-circuit distributor of sports and entertainment programming and obtained for the United States the exclusive commercial exhibition licensing rights to the boxing program "*200: Celebrate and Dominate: Shane Mosley v. Sergio Mora*" ("program"),

---

[1] This Court carefully reviewed and considered the record, including all evidence, arguments, points and authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers filed by the parties. Except as otherwise noted, omission of reference to evidence, an argument, document, objection or paper is not to be construed to the effect that this Court did not consider the evidence, argument, document, objection or paper. This Court thoroughly reviewed, considered and applied the evidence it deemed admissible, material and appropriate for summary judgment. This Court does not rule on evidentiary matters in a summary judgment context, unless otherwise noted.

which was broadcast on Saturday, September 18, 2010.  J & J sub-licensed exhibition rights to commercial establishment customers in the United States to permit them to show the program. To broadcast the program, J & J required commercial establishments to pay a sublicense fee of $1,600 for seating capacity up to 100 persons.  J & J did not sublicense the program to defendants.

J & J alleges that defendants unlawfully intercepted and exhibited the program at their Mountain Mikes Pizza restaurant ("restaurant") in Livingston, California without payment of the $1,600 commercial sub-licensing fee.  Defendant Umaran Bath disclaims knowledge of "who arranged for television programming" at the restaurant on September 18, 2010.

J & J relies on the affidavit of private investigator Gary Gravelyn ("Mr. Gravelyn"), who claims that beginning at 6:13 p.m. during the program, he observed:

1.      Four television sets, including a 40-inch television, around the restaurant's perimeter facing the seating;

2.      The showing of a boxing match between Daniel Ponce De Leon, wearing white trunks, and Antonio Escalante-Escalante, wearing orange trunks;[2]

3.      A satellite dish but no cable box;

4.      No assessed cover charge; and

5.      The restaurant rates "good" and located in a commercial neighborhood.[3]

Mr. Gravelyn notes that his three head counts revealed 11 people in the restaurant.

Defendants point out that Mr. Gravelyn's restaurant visit was limited to no more than three minutes and that his head counts fail to distinguish employees and customers.

In his deposition, Mr. Gravelyn testified that he identified the boxers shown on the television by either a caption identifying the boxers by their shorts' color or by names on their waistbands.

/ / /

---

[2]      Mr. Gravelyn's affidavit fails to identify how many or which television showed the boxing match.

[3]      In his deposition, Mr. Gravelyn characterized the restaurant as a "cafeteria-style Mountain Mike's, kind of a dumpy one."

**Restaurant Operation**

In their declarations, defendants state:

1.      On Saturday evenings, the restaurant has five or six employees and averages 80 customers total with 15-25 customers at a time;

2.      Fifty people is the maximum occupancy of the restaurant's dining room;

3.      On September 18, 2010, the restaurant imposed neither a cover charge nor a change in prices for food or beverages; and

4.      No fighting sports programs have been shown at the restaurant since service of the complaint in this action.

**J & J's Claims**

J & J seeks summary judgment on its claims for violation of the Communications Act of 1934, 47 U.S.C. §§ 605, et seq., and conversion.  By summary judgment, J & J seeks statutory and enhanced damages under 47 U.S.C. § 605 ("section 605") and $1,600 damages for conversion of the program.

**DISCUSSION**

**Summary Judgment Standards**

J & J contends that there is no genuine issue of material fact as to defendants' unlawful interception and broadcast of the program.  Defendants respond that factual issues as to their interception of the program bar summary judgment.

F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."  "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  F.R.Civ.P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

1987).  The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec.*, 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56(a), (c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)

The evidence of the party opposing summary judgment is to be believed and all reasonable inferences from the facts must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.  However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported  motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson*, 477 U.S. at 247-248, 106 S.Ct. 2505.

"[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).  "As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

As discussed below, defendants raise factual issues whether they intercepted the program to defeat summary judgment for J & J.

### Signal Piracy

### *Liability*

Section 605 addresses unauthorized publication or use of wire or radio communications and provides in pertinent part:

(a) . . . no person receiving, assisting in receiving . . . any interstate . . .

communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

   . . .

   (e)(3)(A) Any person aggrieved by an violation of subsection (a) of this section . . . may bring a civil action in a United States district court or in any other court of competent jurisdiction.

Section 605(d)(6) defines "any person aggrieved" to include "any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming."

In addition, the Cable Communications Policy Act of 1992, in particular 47 U.S.C. § 553 ("section 553"), addresses unauthorized reception of cable service and provides in pertinent part:

   (a)(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

   . . .

   (c)(1) Any person aggrieved by any violation of subsection (a)(1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction.

"The Cable Communications Act imposes strict liability under 47 U.S.C. §§ 553 and

7

605." *Don King Productions/Kingvision v. Lovato,* 1996 WL 682006, at *3 (N.D. Cal. 1996). "Both § 553 and § 605 are strict liability statutes." *J & J Sports Productions, Inc. v. Delgado*, 2012 WL 371630, at *3 (E.D. Cal. 2012).

"There are no mens rea or scienter elements for a non-willful violation of 47 U.S.C. § 605(a), or its counterpart governing unauthorized interception of cable service under 47 U.S.C. § 553(a)." *Joe Hand Promotions, Inc. v. Easterling*, 2009 WL 1767579, at *4 (N.D. Oh. 2009). "These are strict liability offenses with no good faith defense." *Easterling*, 2009 WL 1767579, at *4. "As a strict liability statute, to prove a violation, [plaintiff] need only show that the Event was shown in Defendant's establishment without its authorization." *Joe Hand Promotions, Inc. v. Moctezuma Club, Inc.,* 2012 WL 2358254, 2 (N.D. Tex. 2012).

J & J identifies itself as a "person aggrieved" under sections 605 and 553 given its "exclusive nationwide distribution rights to the Program" for commercial establishments, like the restaurant. J & J notes that defendants could legally broadcast the program only by contracting with J & J for a sub-license given J & J's exclusive commercial distribution rights. To establish that the program was shown at the restaurant, J &J points to Mr. Gravelyn's observation of "a satellite dish at the establishment" and the program itself. J & J contends that it is entitled to impose section 605 strict liability on defendants in that the program was shown in the restaurant without J & J's authorization. J & J concludes there are no factual issue whether defendants are subject to section 605 liability.

Defendants respond that reliance on Mr. Gravelyn's observation of a satellite dish is insufficient given failure to connect the satellite dish to the restaurant. Defendants point to Mr. Gravelyn's deposition testimony that the restaurant is located "in a strip style mall with a variety of other small independent retailers." Defendants further note Mr. Gravelyn's inability to identify the satellite dish's location. Defendants attribute Mr. Gravelyn to have "observed a satellite dish at an unspecified location in a strip mall with a variety of independent retailers" to fail to establish by circumstantial evidence or inference defendants' use of the satellite dish to intercept the program.

Defendants further challenge J & J's reliance on Mr. Gravelyn's affidavit that he

8

observed the program at the restaurant and its suggestion that Mr. Gravelyn "observed the entire Program."  Defendants point to Mr. Gravelyn's limited restaurant visit of no more than three minutes and inability to remember precisely how he identified the boxers.  Defendants continue that Mr. Gravelyn's identification of the boxers by their shorts' colors "does not clearly identify the fight as part of the Program" to render Mr. Gravelyn's affidavit insufficient to confirm the program's broadcast at the restaurant.  Defendants explain that if Mr. Gravelyn "cannot confirm how he identified the fighters. . ., there is no way to know what fighters were actually being shown on the television at Mountain Mikes."  Defendants conclude that Mr. Gravelyn's affidavit "does not conclusively support that he actually witnessed the Program."

Defendants raise valid points that J & J's reliance on Mr. Gravelyn's affidavit is at best thin support for summary judgment.  The affidavit's identification of the program is based on Mr. Gravelyn's brief observation of two boxers and their shorts' colors.  The affidavit points to nothing else to connect meaningfully the boxers and their shorts' colors to the program.  Further troubling is Mr. Gravelyn's inability to explain how he identified the boxers:  "I can't be certain whether I saw it visibly through the caption there or whether I saw it from a waistband."

J & J's failure to connect the satellite dish to defendants' or the restaurant raises further factual questions whether defendants intercepted the program.  The evidence viewed in defendants' favor reveals only Mr. Gravelyn's observation of a satellite dish in connection with a strip mall with a variety of independent retailers.  Mr. Gravelyn's observation raises the factual issue whether the satellite dish is connected to another business, especially given Mr. Gravelyn's inability to identify the satellite dish's location.

Defendants have raised sufficient factual issues whether they intercepted the program to bar summary judgment on J & J's satellite piracy claims under sections 553 and 605.

### *Damages*

J & J seeks to impose on defendants statutory damages under section 605(e)(3)(C) given difficulty to prove actual damages sustained by J & J.

Section 605(e)(3)(C)(i)(II) authorizes statutory damages "not less than $1,000 or more

than $10,000, as the court considers just."  47 U.S.C. §605(e)(3)(C)(ii) authorizes "enhanced" damages up to $100,000 if the court finds the violation was willfully committed for commercial advantage or private financial gain.  Alternatively, if "the court finds that the violator was not aware and had no reason to believe that his acts constituted violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250."  47 U.S.C. §605(e)(C)(iii).

Statutory Damages

"In general, statutory damages are appropriate where, as here, the measure of actual damages is difficult to prove."  *Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F.Supp. 730, 732 (D.C. N.Y. 1981).

In his affidavit, J & J President Joseph Gagliardi ("Mr. Gagliardi") states that "signal piracy" has caused J & J's "loss of several millions of dollars of sales revenue" and "has a detrimental effect upon lawful residential and commercial customers of cable and satellite broadcasting whose costs of service are increased significantly by these illegal activities."  Mr. Gagliardi further points to signal pirates' "financial gain on the night our programs are broadcast" and millions of dollars lost to J & J and its customers "resulting, in significant part, from the perceived lack of consequences" to signal pirates.

J & J notes that section 605 awards serve the primary goal of "specific and general" deterrence.  The "amount of damages awarded should be in an amount that is adequate to deter these Defendants and others from committing similar acts in the future."  *Joe Hand Promotions, Inc. v. Gamino*, 2011 WL 66144, at *4 (E.D. Cal. 2011).   A "firm judicial hand is required to stop this predatory behavior, which is outright thievery, and to compensate the aggrieved appropriately."  *J & J Sports Productions, Inc. v. Brazilian Paradise, LLC*, 789 F.Supp.2d 669, 677 (D. S.C. 2011) (internal quotation omitted).  The "difficulty in detecting unlawful interception, the widespread problem of piracy, the projected loss to plaintiff, and the need for an award sufficient to deter future piracy by defendants and others, weigh in favor of granting maximum statutory damages."  *J & J Sports Productions, Inc. v. Cubides*, 2008 WL 2756401, *2 (S.D. Tex. 2008).

J & J points to the absence of a Ninth Circuit formula to calculate section 605 damages to invoke this Court's "considerable discretion."  A fellow district court notes that section 605 damages are based on "the number of patrons in the establishment at the time of the violation" or "a flat sum for damages." *Entertainment by J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F.Supp.2d 769, 776 (S.D. Tex. 2002).  J & J urges a "flat sum" damages calculation given the limited patrons in the restaurant during the program and that "a damage award based on this limited number may do little to prevent such unlawful conduct in the future." *See Kingvision Pay-Per-View, Ltd. v. Gutierrez,* 544 F.Supp.2d 1179, 1184 (D. Colo. 2008). "Merely requiring [defendant] to pay the price it would have been charged to obtain legal authorization to display the Event does nothing to accomplish this objective of the statute. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid." *Entertainment by J & J, Inc.*, 219 F.Supp.2d at 776 (internal quotation omitted).  "[M]inimal damage awards may result in a perceived lack of consequences for signal piracy." *J & J Sports Productions, Inc. v. Herrera*, 2011 WL 643413, at *4 (E.D. Cal. 2011).

J & J proposes no set amount of statutory damages under section 605(e)(3)(C)(i)(II).  J & J relies on this Court's discretion to award statutory damages between $1,000 and $10,000.

Defendants argue that J & J is entitled to no statutory damages given its failure to establish section 605 liability.  Defendants are correct.  Given the factual questions whether defendants intercepted the damages, J & J is entitled to no statutory damages.

<u>Enhanced Damages</u>

Turning to section 605(e)(C)(ii) enhanced damages, J & J contends that defendants' "inadvertent" acquisition of the program is "extremely unlikely" given J & J's efforts to avoid descrambling signals to avoid piracy.  "The act of intercepting an encrypted broadcast is not done by accident, but requires an affirmative action by the defendant. Very simply, the Court finds that the defendant took willful action to unlawfully intercept and broadcast the Exhibition." *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.,* 920 F.Supp.2d 659, 668 (E.D. Va. 2013) ("Because the defendant showed the Exhibition on all of its televisions at no cost, the Court concludes that the defendant acted willfully for commercial

advantage and private financial gain.").

Similar to its approach to statutory damages, J & J proposes no set amount of enhanced damages under section 605(e)(3)(C)(ii) and relies on this Court's discretion to award up to $100,000 enhanced damages.

Defendants note that despite factual issues as to program interception, J & J fails to demonstrate defendants' willfulness given the absence of its evidence of commercial advantage or private financial gain from the program.  Defendants point to *Kingvision Pay-Per-View, Ltd. v. Backman,* 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000), where a fellow district court denied enhanced damages and commented:

> In this case, although the Program was broadcast in a commercial setting, there is no evidence of significant "commercial advantage or private financial gain." Plaintiff has not alleged that Defendant engaged in promotional advertising for the Program or charged a premium for food and drinks. There was no cover charge to enter the establishment. And as there were only 16 patrons in Defendant's establishment at the time of the violation, any commercial advantage or private financial gain was minimal at best.

Defendants argue that an award of enhanced damages, let alone statutory damages, is unwarranted given the absence of evidence of a cover charge, program promotion, premium prices charged for food or drinks, head counts in excess of 11 (which do not distinguish employees and customers), and repeated piracy.  Defendants note that the limited customers whom Mr. Gravelyn observed are below the restaurant's seating capacity and average for a Saturday night.  Defendants conclude there is no evidence that the program "produced even a de minimus financial benefit."

Defendants raise valid points.  J & J fails to show it is entitled to enhanced damages, especially given factual issues whether defendants' intercepted the program.

### Conversion

J & J further seeks to impose on defendants a $1,600 judgment for its conversion claim.

"In California, conversion has three elements: ownership or right to possession of property, wrongful disposition of the property right and damages."  *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992).  Broadcast

12

signals and rights constitute property for a conversion claim. *DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d 1182, 1189 (E.D. Cal. 2005) ("Plaintiff possesses a right to distribute programming via satellite broadcast, thereby satisfying the first element of conversion"); *Don King Productions/Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995).

J & J contends that its exclusive program distribution rights constituted its possession of the program which was intercepted and thus converted. J & J seeks $1,600, which is the commercial sub-license fee charged to an establishment with the restaurant's seating capacity.

Defendants challenge J & J's establishment of "wrongful disposition of the property right" element given factual issues whether defendants' intercepted the program.

Defendants are correct. Factual issues as to the program's interception bar summary judgment on the conversion claim, similar to J & J's other claims. As such, J & J fails to support a separate award for conversion damages.

## Legal Expenses

Section 605(e)(3)(B)(iii) provides for "recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." As such, J & J requests to submit papers for an award of attorney fees and costs.

An award of attorney fees and costs at this time is inappropriate with denial of summary judgment.

## Failure To Comply With Scheduling Order

This Court's March 1, 2012 scheduling order addresses requirements to file a summary judgment motion and provides:

> Prior to filing a motion for summary judgment or motion for summary adjudication the parties are ORDERED to meet, in person or by telephone, and confer to discuss the issues to be raised in the motion.

> The purpose of the meeting shall be to: 1) avoid filing motions for summary judgment where a question of fact exists; 2) determine whether the respondent agrees that the motion has merit in whole or in part; 3) discuss whether issues can be resolved without the necessity of briefing; 4) narrow the issues for review by the court; 5) explore the possibility of settlement before the parties incur the expense of briefing a summary judgment motion; 6) to arrive at a joint statement of undisputed facts.

The moving party shall initiate the meeting and provide a draft of the joint statement of undisputed facts. In addition to the requirements of Local Rule 260 the moving party shall file a joint statement of undisputed facts.

In the notice of motion the moving party shall certify that the parties have met and conferred as ordered above or set forth a statement of good cause for the failure to meet and confer.

J & J fails to certify that it engaged in meeting and conferring or attempted to prepare a joint factual statement.  J & J points to nothing to excuse its compliance with the scheduling order.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.      DENIES J & J summary judgment; and

2.      ORDERS J & J's counsel, no later than November 14, 2013, to file and serve papers to show cause why this Court should not impose sanctions on J & J's counsel for disobedience of the scheduling order.


IT IS SO ORDERED.

Dated:   __November 7, 2013__            ___/s/ Lawrence J. O'Neill__
                                          UNITED STATES DISTRICT JUDGE

14